DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from a judgment of the Lucas County Court of Common Pleas. Appellants, Michael J. Murdock and Paula J. Murdock, raise the following assignments of error: *Page 2 
 {¶ 2} "The trial court erred by conducting a little trial' and thus erred in granting summary judgment to JPMorgan Chase Bank."
 {¶ 3} "As the Murdocks were current in their payments, the trial court erred in allowing Exchange Bank to retroactively (and without sending notice) accelerate their note, and thus erred in granting summary judgment to Exchange Bank."
 {¶ 4} The facts relevant to our disposition of this cause are as follows. On March 30, 2005, appellee, JPMorgan Chase Bank ("Chase"), filed a complaint in foreclosure alleging that it was the holder of a note and mortgage entered into by Chase and appellants on October 22, 1999. Under the terms of the note and mortgage, appellants received $15,500. The loan was secured by appellants' residence. In Count 1 of its complaint, Chase asserted that appellants defaulted on their payment of the note and, therefore, claimed that appellants owed Chase $14,969.97 plus "13.3000% per year from February 1, 2002 * * *."
 {¶ 5} In Count 2 of its complaint, Chase maintained that it was entitled to have its mortgage on appellants' residence foreclosed and to a finding that its mortgage on the property was the valid first lien. Chase also named appellee, Exchange Bank ("Exchange"), and the Treasurer of Lucas County, Ohio, as defendants in the complaint.
 {¶ 6} Exchange filed an answer and a cross-claim against appellants. Exchange contended that, in December 1997, appellants entered into a loan agreement with Towne Bank, Exchange's predecessor in interest, and secured that loan with a mortgage on their *Page 3 
residence. Exchange asserted that appellants jointly and severally owed it "$62,350.51 plus interest of 6.5% per annum from April 4, 2005."
 {¶ 7} Subsequently, Chase filed a motion for summary judgment in which it argued that no question of fact existed on its claim against appellants and that it was, therefore, entitled to a judgment of foreclosure. Chase's motion was supported by the affidavit of Helen Steels, a foreclosure specialist "of Litton Loan Servicing, L.P.," a servicing agent for Chase. The affidavit incorporated the promissory note setting forth the amount loaned to appellants and the terms of the note. Sheet's affidavit also incorporated the mortgage securing the note. Sheets averred that appellants were in default on the note and mortgage as of March 1, 2002, and all subsequent payments. She further stated that, pursuant to the mortgage, Chase accelerated the entire balance due.
 {¶ 8} In their memorandum in opposition to Chase's motion for summary judgment, appellants, referring to a previous common pleas court case, contended that they entered into a settlement agreement with Chase, which Chase subsequently failed to honor. Appellants' argument was supported by the affidavit of Michael J. Murdock. The affidavit reads, in material part:
 {¶ 9} "3. [Chase] and I were parties in the case captioned in the Court of Common Pleas, Lucas County, Ohio captioned The Exchange Bank,Plaintiff v. Michael J. Murdock, et al. Defendants, Case No. CI0200203572.
 {¶ 10} "4. In February 2003, [Chase], I, and my attorney Steven Hales entered into an agreement in full settlement of all issues in said case, to wit; I would pay $2,454.21 to *Page 4 
plaintiff and in return [Chase] promised the loan and mortgage would be fully reinstated and continued according to its original terms."
 {¶ 11} "5. I fulfilled my obligations under the settlement agreement by tendering payment in the amount of $2,460.00.
 {¶ 12} "6. [Chase] breached the agreement and refused to accept payment.
 {¶ 13} "7. Continuously since that time [Chase] has refused to accept payments and has failed to properly reinstate the loan, and although requests have been made, [Chase] has failed and refused to communicate as to how or where to make payments.
 {¶ 14} "8. I at all times have been willing to abide [sic] my obligations under the agreement."[1]
 {¶ 15} Chase did not respond to appellants' memorandum in opposition.
 {¶ 16} Exchange then filed a motion for summary judgment supported by the affidavit of Jeffrey L. Roberts, who is Exchange's Collection Manager, and the promissory note signed by appellants. Referencing its complaint, Exchange urged that no question of material fact existed on the issues of whether (1) appellants received a loan from Exchange's predecessor in interest, Towne Bank, in 1997; (2) the loan was secured by a first mortgage on appellants' residential property; (3) appellants defaulted on the *Page 5 
loan; (4) appellants now owed Exchange $62,581.82 plus 6.5 percent interest per annum; and (5) Exchange had a Certificate of Judgment Lien on appellants' property.
 {¶ 17} In their memorandum in opposition to Exchange's motion for summary judgment, appellants asserted that they were current in their payments on the note for the year 2005, and attached copies of the receipts for those payments to their memorandum. In reply, Exchange filed the affidavit of Robert Fintel, Senior Vice-President of Exchange, who averred that appellants were in default due to their late payments on their mortgage and their failure to pay their second mortgage obligation to Chase and, as a consequence, Exchange properly accelerated the entire balance as due.
 {¶ 18} On January 30, 2006, the trial court granted Chase's motion for summary judgment. The court initially determined, under R.C. 5301.23, that Exchange's mortgage had priority over Chase's mortgage. The lower court then found that Chase produced evidence of the promissory note and of the mortgage and that appellants defaulted on the mortgage. The judge further held that appellants failed to offer any evidence, except Michael Murdock's affidavit, of a settlement between appellant and Chase and of Chase's purported refusal to accept tendered payments pursuant to that agreement. In reaching this decision, the common pleas judge stated that she engaged in "a cursory review" of the docket in Exchange Bank v.Murdock, CI20020372, and found that a complaint in foreclosure was filed against the Murdocks on June 21, 2002. She then noted that the docket showed that the parties entered into a consent judgment for foreclosure, that an order of sale was signed and granted, and that the case was dismissed, without *Page 6 
prejudiced, on May 12, 2003. Finding, therefore, that no genuine issue of material fact existed on Chase's claim, the court held that the bank was entitled to have its mortgage foreclosed.
 {¶ 19} On the same date, the court below granted Exchange's motion for summary judgment based upon Section 7(D) of the promissory note, which allowed Exchange to accept late payments without waiving its right to call the note due, in full, in the future. The court held that "once a default payment has occurred under the terms of a note, and the note has been accelerated, the holder of the note is entitled to judgment." Finding no genuine issue of material fact existed, the court determined that Exchange was entitled to have its mortgage foreclosed.
 {¶ 20} In both of the foregoing judgment entries, the court set a date for trial for the sole purpose of determining the amount owed on each note/mortgage. On April 6, 2006, the parties filed a stipulation stating that as of March 16, 2006, appellants owed Exchange $60,501.14 and owed Chase $23,152.18 as of March 29, 2006. This timely appeal followed.
 {¶ 21} Because the trial court granted summary judgment to Chase and Exchange banks, our review of appellants' assignments of error is de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we must independently review the record to determine if summary judgment was appropriate and are not required to defer to the trial court's decision. Brown v. Scioto Bd. of Comm'rs. (1993),87 Ohio App.3d 704, 711. *Page 7 
 {¶ 22} Summary judgment is proper where there are no genuine issues of material fact, the moving party is entitled to judgment as a matter of law, and reasonable minds can only come to a conclusion adverse to the nonmoving party, construing the evidence most strongly in that party's favor. Civ.R. 56(C); Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66. The moving party bears the initial burden of informing the court of the basis for the motion, and demonstrating the absence of a genuine issue of material fact. Dresher v. Burt,75 Ohio St.3d 280, 293, 1996-Ohio-107. If the moving party meets its burden, the nonmoving party has a reciprocal burden to set forth specific facts showing a genuine issue for trial. Id.
 {¶ 23} In their first assignment of error, appellants maintain that the trial court improperly engaged in a "little trial" in order to grant summary judgment to Chase. Appellants contend that in the absence of any evidence offered by Chase to create a genuine issue of material fact, Michael's affidavit in support of their motion for summary judgment establishes that Chase and appellants entered into a settlement agreement, the terms of that agreement, and Chase's failure to accept tendered payments on their mortgage. They assert, in essence, that the trial court, by, sua sponte, examining the docket of the 2002 case impermissibly weighed the evidence therein in order to grant summary judgment to Chase. Chase argues that Michael's affidavit sets forth legal conclusions or opinions without any supporting facts, and, thus, does not meet the requirements of Civ.R. 56(E). *Page 8 
 {¶ 24} A trial court may consider evidence in the form of an affidavit in deciding a motion for summary judgment. Civ.R. 56(E). Affidavits must be based upon personal knowledge, set forth facts that are admissible in evidence, and show that "the affiant is competent to testify to the matters stated in the affidavit." Id. An affidavit that merely provides legal opinions or conclusions unsupported by facts in the affidavit do not meet the requirements of Civ.R. 56(E). Skatulski v. Bank One,158 Ohio App.3d 189, 2004-Ohio-3981, ¶ 10. See, also, Fifth Third Bank v.Mufleh, 6th Dist. Nos. L-04-1188, L-04-1157, and L-04-1262,2005-Ohio-2351, ¶ 17.
 {¶ 25} In the case under consideration, Michael Murdock's affidavit contains admissible hearsay in Paragraph 4 in the form of Murdock's statements about what Chase allegedly agreed to or intended with regard to a supposed settlement agreement. See Matthews v. D'Amore, 10th Dist. No. 05AP-1318, 2006-Ohio-5745, ¶ 27 (Finding that the trial court did not err in striking portions of an affidavit containing inadmissible hearsay as to the opposing party's statements and intentions.). Without the hearsay in Paragraph 4, Murdock's claim that there was a settlement agreement and the terms of that agreement is simply a legal conclusion or opinion. Accordingly, error, if any, on the part of the trial court in "weighing" the evidence by taking judicial notice of the docket in a prior action is harmless error. See Civ.R. 61. Consequently, the trial court did not err in granting Chase's motion for summary judgment, and appellants' first assignment of error is found not well-taken. *Page 9 
 {¶ 26} In their second assignment of error, appellants assert that the trial court erred in granting summary judgment to Exchange because the bank could not retroactively accelerate their promissory note. They further contend that Exchange could not accelerate the note without providing appellants with notice of default.
 {¶ 27} "It is axiomatic that a promissory note * * * constitutes a separate enforceable contract." Fisk Alloy Wire, Inc. v. Hemsath, 6th Dist. No. L-05-1097, 2005-Ohio-7007, at ¶ 40. Accordingly, contract law governs the interpretation and construction of the promissory note in the instant case. The fundamental purpose of a judicial examination of any contract is to ascertain and give effect to the intent of the parties to the instrument. Foster Wheeler Enviresponse, Inc. v. FranklinCty. Convention Facilities Auth, 78 Ohio St.3d 353, 361, 1997-Ohio-2002. In reviewing the language in a contract we must give the words therein their plain and ordinary meaning unless some other meaning is evidenced within the document. Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, 245.
 {¶ 28} The relevant provisions in the promissory note at hand are:
 {¶ 29} "7. BORROWER'S FAILURE TO PAY AS REQUIRED
 {¶ 30} "A. Late Charge for Overdue Payments
 {¶ 31} "If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I [appellants] will pay a late charge to the note holder. The amount of the charge will be 5.000% of my overdue *Page 10 
payment of principle and interest. I will pay this promptly but only once on each late payment."
 {¶ 32} "B. Default
 {¶ 33} "If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.
 {¶ 34} "C. Notice of Default
 {¶ 35} "If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.
 {¶ 36} "D. No Waiver by Note Holder
 {¶ 37} "Even if, at a time when I am in default, the Note Holder doesnot require me to pay anything immediately in full, as described above,the Note Holder will still have a right to do so if I am in default at alater time." (Emphasis added.)
 {¶ 38} With regard to the alleged lack of notice, the term "may" is generally construed as being permissive and not mandatory. SeeColumbus Countywide Development Corp. v. Junior Village of Dublin,Inc., 10th Dist. No. 03AP-73, 2003-Ohio-5447, ¶ 21. Exchange's filing of its motion for summary judgment is supported by the affidavit of Jeffrey L. Roberts, Collection Manager of Exchange Bank, in which he explicitly states that the bank has "elected to accelerate the entire balance due." The *Page 11 
financial statements detailing payments on appellants' note demonstrate that they were in default on their loan at the time that Exchange filed its motion for summary judgment. Specifically, as set forth infra, appellants' payments on the note were due on the first of each month, with a 15 day grace period. The bank filed its motion for summary judgment on November 28, 2005. The bank's financial records reveal that appellants' payment for that month was late. Thus, appellants were in default pursuant to Paragraph 7(B) of the note thereby triggering Exchange's right to accelerate full payment on the note under Paragraphs 7(C) and (D). Therefore, no genuine issue of material fact exists on the question of whether, under the terms of the note, Exchange could accelerate payment on appellant's loan, and appellant's second assignment of error is found not well-taken.
 {¶ 39} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
 JUDGMENT AFFIRMED. *Page 12 
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J. CONCUR.
[1] Michael Murdock's earlier affidavit, in support of a motion for an extension of time, asks for such time for the purpose of acquiring documentation of the settlement agreement and vows that Chase, through its authorized agent, Litton Loan, L.P., refused any and all payments tendered by appellants. The affidavit also swears that appellants and their previous attorney tried, but were unable to find someone in authority at Chase who would accept payment. *Page 1